return filed for 1920. The Commissioner allowed a deduction of only $666.67, on the theory that the payment should be prorated over the life of the agreement, which resulted in the deficiency here involved.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

GRAUPNER: In its petition the taxpayer contends that the sum of $5,000 was paid for the privilege of securing the lease. At the hearing it claimed that the $5,000 was paid for the purpose of expediting the manufacture of the machines by a company which was then starting in business, and to secure prompt delivery. Taxpayer also asks that we hold the agreement to be divisible.

It appears to us immaterial whether or not the agreement was divisible. The cases cited by the taxpayer involve contracts a part of which were valid and a part invalid. We are not concerned with the validity of any part of the contract executed by the taxpayer, particularly as it appears that the requirements of the contract have been fulfilled by both parties. In asking us to find that the payment of $5,000 was made for a purpose other than to secure a license to use the patented machines, the taxpayer is asking that we read into the agreement something that will vary its plainly expressed terms and to construe the meaning of the agreement in a manner radically different from the meaning which would naturally be arrived at by placing upon the terms thereof their ordinary and accepted meaning. There appears to us to be no ground for such a construction, as the instrument on its face is complete and we can find in it no ambiguity which needs an interpretation other than that to be gained by the clear import of its terms.

---

### APPEAL OF HENRY STODDARD.

Docket No. 3198.   Submitted September 25, 1925.   Decided November 20, 1925.

*William B. Dana, Esq.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL and PHILLIPS.

This is an appeal from the determination of a deficiency of $3,930.48 in income tax for the calendar years 1919, 1920, and 1921. The question involved is whether the taxpayer is entitled to deduct a claimed loss on the sale of securities which were held by trustees under an instrument given by the taxpayer.

FINDINGS OF FACT.

The taxpayer is an individual and a resident of Connecticut. For a number of years it has been the custom of the taxpayer and his wife, both of whom are of advanced age, to spend the winter of each year in the South.

On December 21, 1916, the taxpayer executed and Clifford I. Stoddard and the Union & New Haven Trust Co. accepted the trust created by the following instrument:

I, Henry Stoddard, of the Town of Woodbridge, State of Connecticut, do hereby give, grant, sell, assign, transfer and convey unto my son, Clifford I. Stoddard, of said Woodbridge, as trustee, and unto the Union & New Haven Trust Company, a corporation organized under the laws of the State of Connecticut and located in said New Haven, as co-trustee, with my son Clifford, the several items of property noted in the schedule or schedules of property hereto· annexed, marked "Exhibit A," and made part hereof. The said trustees are to take, hold and dispose of said property upon the trust and subject to the conditions stated in this instrument. Said trustees shall have power to invest or reinvest any part of the principal of the trust fund, to change investments, and for that purpose to sell, convey, pledge and mortgage said trust fund at discretion to hold the same during my life, collect the income and to pay over to my wife, Amelia E. Stoddard, annually three thousand dollars ($3,000), to be paid in equal quarterly installments, on or about the 16th days of January, April, July and October in each year, and at such times to pay over the balance of said net income to me during the full term of my life. At my death, the said trustees are to pay over and deliver to the trustees named in my will all the trust fund, principal, and income, to be held by such trustees named in my will upon the trusts and as a part of the trust fund created, established and provided for in my will.

I hereby reserve the right to withdraw from said trust fund any and each item of property, and add thereto at my discretion, and I also reserve the right to terminate this trust, either in whole or in part, at my discretion, and in case of the exercise of such reserved right of withdrawal of any item of property, or of terminating this trust, in whole or in part, then and in such event, the trust shall terminate and the property shall be thereupon returned to me.

Subsequent to the execution of this instrument the following securities, which are referred to in the instrument as being listed in "Exhibit A," were delivered to the Union & New Haven Trust Co. and placed in a safe-deposit box:

500 shares, Brooklyn Rapid Transit Co.
100 shares, Scranton Electric Co., preferred.
100 shares, Mackay Co., preferred.
400 shares, Interborough Consolidated Corporation, preferred.
300 shares, American Telephone & Telegraph Co.
300 shares, The General Electric Co.
161 shares, The Associated Drygoods Corporation, first preferred.
80 shares, The Associated Drygoods Corporation, second preferred.

$13,000 par value, New York, New Haven & Hartford Railroad Co.'s debenture, due March 1st, 1947, numbers 1028 to 1031, both inclusive, 1045, 1712 to 1717, both inclusive, 1937 and 1938.

The stock certificates representing part of the securities were transferred to Clifford I. Stoddard and the Union & New Haven Trust Co., trustees under the deed of Henry Stoddard.

Subsequently, Henry Stoddard, Amelia E. Stoddard, Clifford I. Stoddard, and the Union & New Haven Trust Co. executed the following instrument:

Memorandum agreement, made this 28th day of October, 1918, by Amelia E. Stoddard and Henry Stoddard, husband and wife, with Clifford I. Stoddard and Union and New Haven Trust Company, Trustees.

Witnesseth, that the said Amelia E. Stoddard has and does assign to said trustees the securities mentioned in the schedule annexed hereto, in trust, however, to collect and pay over the income and account for the principal as is herein stated. The trustees are to collect the income and add the same to the income received by said trustees from the Henry Stoddard Trust. The net joint income so received is to be paid over by said trustees to said Henry and Amelia E. Stoddard, one-half to each at the times and in the manner mentioned in the Henry Stoddard Trust. Said Amelia E. Stoddard may add to said trust or withdraw therefrom any securities at her pleasure and this trust terminates upon her death, and in such case, the trustees will turn over the trust property to her executors and administrators. Said Henry Stoddard agrees to the equal division of said joint net income and becomes a party hereto for that purpose.

Henry Stoddard, from time to time after the execution of the instrument in 1916, directed the sale of certain securities held by the trustees and the addition thereto of others. During the years 1919, 1920, and 1921, certain of the securities held by the trustees under the Henry Stoddard instrument were sold at losses in the amounts of $2,482.80, $7,360.91, and $12,963.54, respectively. Of the securities sold all except certain Liberty Loan bonds, Victory notes, and Anglo-French bonds were acquired by Stoddard prior to the creation of the so-called trust in 1916. The Liberty Loan bonds and Victory notes were sold in 1921 at a loss of $171.23. The Anglo-French bonds were sold in 1920 at a profit of $310. The amount of the losses on securities acquired before March 1, 1913, was computed on the basis of cost or March 1, 1913, value, whichever was lower.

The taxpayer at all times retained control of the securities held by the trustees and directed the sales of securities and the investment of funds held by them. In some cases the proceeds of sales were paid directly to the taxpayer and in others they were paid to the trustees.

In October, 1924, the taxpayer and his wife revoked, in writing, the instruments they had formerly executed, and the trustees returned to them the securities which they, the trustees, then held.

DECISION.

The determination of the Commissioner is approved. *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; *Appeal of Brown & Ives, Trustees*, 2 B. T. A. 936.

---

## APPEAL OF MARLBORO FERTILIZER CO.

Docket No. 3797. Submitted July 14, 1925. Decided November 20, 1925.

*Edward P. Hodges, Esq.*, for the taxpayer.
*Blount Ralls, Esq.*, for the Commissioner.

### Before MARQUETTE and MORRIS.

This is an appeal from the determination of deficiencies in income and profits taxes for the years 1919 and 1920 in the amount of $11,-963.28, and an overassessment for 1918 in the amount of $4,995.68, or a net deficiency of $6,967.60.

The question is whether the net income should be determined on the basis of a calendar year or a fiscal year.

FINDINGS OF FACT.

The taxpayer is a South Carolina corporation with principal office in Bennettsville.

It was organized in 1910 by about 15 farmers, and thereafter engaged in the business of manufacturing fertilizer for use on farms.

The nature of its business was such that practically its entire product was made and sold within the first six months of each year. Most of its sales occurred in April and to a large extent payment was made therefor by notes delivered in June but due in October. The taxpayer engaged in practically no activity during the last six months of each calendar year, outside of the collection of accounts and the purchase of raw materials in preparation for the business of the following year.

The taxpayer opened a new set of books on January 1 of each year, and for the years 1910 to 1921, inclusive, rendered its tax returns on a calendar year basis.

The annual meeting of the taxpayer was held on July 1 of each year, and for convenience the profit and loss account was ruled down on June 30 of each year to disclose the then book profits. No dividends were declared by the directors until after the collection of the accounts which were reflected in the June 30 profit and loss statement. The directors held their meetings for that purpose at the